IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA )
)
        Plaintiff, )
)
v. ) Case No. 18-01338
)
APPROXIMATELY $293,338.00 )
IN UNITED STATES CURRENCY, )
)
        Defendant. )
)

## COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by and through its attorneys, Stephen R. McAllister, United States Attorney for the District of Kansas, and Sean M.A. Hatfield, Special Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America the following property: Approximately $293,338.00 in United States currency (hereinafter "defendant property"), for violations of 21 U.S.C. § 841.

## THE DEFENDANT IN REM

2.  The defendant property consists of approximately $293,338.00 in United States currency that was seized on July 12, 2018 by the Kansas Highway Patrol during a routine traffic stop of a vehicle driven by Juan Carlos Herrera on the Southbound Kansas Turnpike at milepost 182 in Wabaunsee County, in the District of Kansas. The currency is currently in the custody of the United States Marshal Service.

## JURISDICTION AND VENUE

3.  Plaintiff brings this action in rem in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355.

4.  This Court has in rem jurisdiction over the defendant property under 28 U.S.C. § 1355(b). Upon filing this complaint, the plaintiff requests that the Court issue an arrest warrant in rem pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district and/or pursuant to 28 U.S.C. § 1395, because the defendant property was found in the district.

## BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; and/or 2) proceeds traceable to such an exchange; and/or 3) money, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

7. Supplemental Rule G(2)(f) requires this complaint to state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Such facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in Exhibit A which is attached hereto and incorporated by reference.

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff requests that the Court issue a warrant for the arrest of the defendant property; that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the properties; that the defendant property be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and

disbursements in this action; and for such other and further relief as this Court deems proper and just.

The United States hereby requests that trial of the above entitled matter be held in the City of Wichita, Kansas.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney

/s/ Sean Hatfield

SEAN M.A. HATFIELD
Ks. S. Ct. No. 24098
Special Assistant United States Attorney
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
T: (316) 269-6481
F: (316) 269-6484
sean.hatfield@usdoj.gov

## DECLARATION

I, Andrea Harrison, am a Special Agent with the Drug Enforcement Administration in the District of Kansas.

I have read the contents of the foregoing Complaint for Forfeiture, and the exhibit thereto, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of December, 2018.

*/s/ Andrea Harrison*
SA Andrea Harrison
DEA

## AFFIDAVIT

I, Andrea Harrison, a Special Agent with the Drug Enforcement Administration, being duly sworn, depose and state:

1. I have been employed by the DEA for approximately sixteen and a half years. Since becoming a Special Agent with the DEA, I have participated in numerous drug investigations, involving the unlawful manufacture of methamphetamine, possession of controlled substances (including phencyclidine (PCP), cocaine, crack cocaine (cocaine base), marijuana, methamphetamine, and heroin), as well as investigations of activity of monetary transactions involving proceeds of specified unlawful activities and conspiracies associated with criminal drug trafficking offenses, in violation of Title 21, United States Code, Section 841(a)(1); Title 21, United States Code, Section 843(b), unlawful use of a communication device to commit and facilitate the commission of drug trafficking offenses; Title 21, United States Code, Section 846, conspiracy and attempt to possess with intent to distribute and distribution of controlled substances; Title 21, United States Code, Section 848, continuing criminal enterprise; Title 21, United States Code, Sections 952 and 960, importation of controlled substances; and Title 21, United States Code, Section 963, conspiracy and attempt to import controlled substances; Title 18, United States Code, Section 1956, laundering of monetary instruments; Title 18, United States Code, Section 1957, engaging in monetary transactions in property derived from specified unlawful activity, and Title 18, United States Code, Section 2, aiding and abetting. In connection with my official DEA duties, I investigate criminal violations of the Controlled Substances Act. I received specialized training in the enforcement of federal narcotics laws through the sixteen week DEA Academy during 2002. My training and experience includes, but is not limited to (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge

of the distribution and transportation of controlled substances and of the laundering and concealment of proceeds of drug trafficking, (b) surveillance; and (c) analysis of documentary and physical evidence. I have also received training and participated in investigations involving the interception of wire communications. Based on my training and experience as a DEA Agent, I have become familiar with the manner in which narcotics traffickers conduct their drug related businesses, including the methods employed by narcotics dealers to import and distribute narcotics, drug proceeds, and other aspects of narcotics trafficking. I have received training relating to the investigation of drug and money laundering offenses and have been personally involved in several investigations involving the unlawful possession, manufacture, and distribution of controlled substances, including phencyclidine (a/k/a "PCP"), cocaine, cocaine base (a/k/a "crack cocaine"), methamphetamine, marijuana, heroin and money laundering. My training and experience has also involved physical surveillance, execution of search warrants, arrests of drug traffickers, and the handling of cooperating sources and other sources of information. Through these investigations, my training, experience, and conversations with experienced agents, other drug investigators, and law enforcement personnel. I have become familiar with the methods employed by drug traffickers in general, including the use of debit calling cards, public telephones, wireless communications technology such as paging devices and cellular phones, counter surveillance, elaborately planned smuggling schemes tied to legitimate businesses, and the use of false or fictitious identities and coded communications in an attempt to avoid detections by law enforcement and circumvent drug investigations.

2. I have discussed the facts of this investigation with other law enforcement officers and agents involved in this investigation. I have also reviewed reports and evidence obtained by these officers and agents during the course of this investigation. The probable cause cited in this

affidavit is derived from the reports and evidence obtained by these officers and agents as well as from my own involvement in the investigation. This affidavit is submitted in support of a civil forfeiture action.

3. On July 12, 2018, Kansas City Kansas Highway Patrol Trooper J. Ranieri, conducted a traffic stop on a 2013 Grey Ford Mustang at S KTA MP 182. The Mustang was following behind a silver passenger car more closely than was reasonable and prudent, and Mustang drifted on the right lane marker. Trooper Ranieri contacted the driver, Juan Carlos HERRERA and explained the reason for the stop. HERREA produced a Texas driver's license and registration for the Mustang. HERRERA was the only occupant of the vehicle. HERRERA claimed he was working construction in Kansas City, KS for about a week and was heading back to El Paso, Texas because his grandma was sick. Trooper Ranieri observed HERRERA to be very nervous, having shaky hands, bouncing legs and avoided eye contact.

4. During a consent search search of the Mustang, Trooper Ranieri discovered an unusual amount of Bondo dust in the door jam. Trooper Ranieri discovered that the passenger side floor carpet had a non-factory fold in it by the transmission hump and that the carpet was pulled away from the transmission hump. Trooper Ranieri discovered a non-factory false compartment. Trooper Ranieri could see non-factory/aftermarket sheet metal and sheet metal screws added to the transmission/firewall area.

5. Once at the Troop N office, HERRERA said that he had his life savings in the false compartment, but was uncertain of the exact amount. HERRERA explained to Trooper Ranieri and TFO Rieger how to open the false compartment without damaging the vehicle. HERRERA told them they had to remove the passenger side windshield wiper and passenger side windshield plastic cowling. Trooper Ranieri was able to see the post-manufacture

compartment trap door on the firewall area. The false compartment was the whole firewall area and was full of vacuum sealed bags of United States currency. Trooper Ranieri and TRO Rieger removed eleven (11) vacuum sealed bags of USC from the false compartment.

6. Technical Trooper Bryan Clark worked his certified drug detection dog on the USC and received an indication to drug odor. The total amount of USC seized was approximately $293,338.00.

7. Based on the information set out above, I have probable cause to believe that the approximately $293,338.00 seized by Trooper Ranieri constitutes money or other things of value furnished or intended to be furnished in exchange for a controlled substances, or proceeds traceable to such an exchange, or was used or intended to be used to facilitate one or more violations of Title 21, U.S.C. § 841 et seq. Accordingly, the approximately $293,338.00 is subject to forfeiture pursuant to 21 U.S.C. §881.

Andrea Harrison
Special Agent
Drug Enforcement Administration

Sworn to and subscribed by me this 12th day of December, 2018.



NOTARY PUBLIC
STATE OF KANSAS
SANDRA K STOECKLEIN
My Commission Expires 3/23/2_

NOTARY

4